QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
James R. Asperger (Bar No. 083188)
jimasperger@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:  (650) 801-5000
Facsimile:  (650) 801-5100

Attorneys for Plaintiff the California
Institute of Technology

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| The CALIFORNIA INSTITUTE OF TECHNOLOGY, a California corporation, <br><br> Plaintiff, <br><br> vs. <br><br> HUGHES COMMUNICATIONS, INC., a Delaware corporation, HUGHES NETWORK SYSTEMS, LLC, a Delaware limited liability company, DISH NETWORK CORPORATION, a Nevada corporation, DISH NETWORK L.L.C., a Colorado limited liability company, and DISHNET SATELLITE BROADBAND L.L.C., a Colorado limited liability company, <br><br> Defendants. | CASE NO. 2:15-CV-01108 <br><br> **COMPLAINT FOR PATENT INFRINGEMENT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff the California Institute of Technology ("Caltech" or "Plaintiff"), by and through its undersigned counsel, complains and alleges as follows against Hughes Communications, Inc., Hughes Network Systems, LLC, DISH Network Corporation, DISH Network L.L.C., and dishNET Satellite Broadband L.L.C. (collectively, "Defendants"):

## NATURE OF THE ACTION

1.      This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq*.

2.      Defendants have infringed and continue to infringe, contributed to and continue to contribute to the infringement of, and/or actively induced and continue to induce others to infringe Caltech's U.S. Patent No. 7,116,710, U.S. Patent No. 7,421,032, U.S. Patent No. 7,916,781, and U.S. Patent No. 8,284,833 (collectively, "the Asserted Patents").  Caltech is the legal owner by assignment of the Asserted Patents, which were duly and legally issued by the United States Patent and Trademark Office.  Caltech seeks injunctive relief and monetary damages.

## THE PARTIES

3.      Caltech is a non-profit private university organized under the laws of the State of California, with its principal place of business at 1200 East California Boulevard, Pasadena, California 91125.

4.      On information and belief, Hughes Communications, Inc. ("Hughes Communications") is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 11717 Exploration Lane, Germantown, Maryland 20876.

5.      On information and belief, Hughes Network Systems, LLC ("Hughes Network") is a limited liability company organized under the laws of the State of Delaware, with its principal place of business located at 11717 Exploration Lane, Germantown, Maryland 20876.  On information and belief, Hughes Network is a wholly owned subsidiary of Hughes Communications.  Hughes Communications

1   and Hughes Network, collectively, are referred to as "Hughes Defendants."

2   6.     On information and belief, DISH Network Corporation ("DISH Corp.")

3   is a corporation organized under the laws of the State of Nevada with its principal

4   place of business located at 9601 South Meridian Boulevard, Englewood, Colorado

5   80112.

6   7.     On information and belief, DISH Network L.L.C. ("DISH L.L.C.") is a

7   limited liability company organized under the laws of the State of Colorado with its

8   principal place of business located at 9601 South Meridian Boulevard, Englewood,

9   Colorado 80112.   On information and belief, DISH L.L.C. is a wholly owned

10  subsidiary of DISH Corp.

11  8.     On information and belief, dishNET Satellite Broadband L.L.C.

12  ("dishNET") is a limited liability company organized under the laws of the State of

13  Colorado with its principal place of business located at 9601 South Meridian

14  Boulevard, Englewood, Colorado 80112.   On information and belief, dishNET is a

15  wholly owned subsidiary of DISH Corp.   On information and belief, dishNET and

16  DISH L.L.C. are related entities.   DISH Corp., DISH L.L.C., and dishNET,

17  collectively, are referred to as "Dish Defendants."

18  ## JURISDICTION AND VENUE

19  9.     This Court has jurisdiction over the subject matter of this action under

20  28 U.S.C. §§ 1331 and 1338(a).

21  10.    Hughes Defendants are subject to this Court's personal jurisdiction.  On

22  information and belief, Hughes Defendants regularly conduct business in the State

23  of California, including in the Central District of California, and have committed

24  acts of patent infringement and/or contributed to or induced acts of patent

25  infringement by others in this District and elsewhere in California and the United

26  States.   As such, Hughes Defendants have purposefully availed themselves of the

27  privilege of conducting business within this District; have established sufficient

28  minimum contacts with this District such that they should reasonably and fairly

1  anticipate being haled into court in this District; have purposefully directed activities
2  at residents of this State; and at least a portion of the patent infringement claims
3  alleged herein arise out of or are related to one or more of the foregoing activities.

4       11.    Dish Defendants are subject to this Court's personal jurisdiction. On
5  information and belief, Dish Defendants regularly conduct business in the State of
6  California, including in the Central District of California, maintain employees in this
7  District and elsewhere in California, and have committed acts of patent infringement
8  and/or contributed to or induced acts of patent infringement by others in this District
9  and elsewhere in California and the United States. As such, Dish Defendants have
10 purposefully availed themselves of the privilege of conducting business within this
11 District; have established sufficient minimum contacts with this District such that
12 they should reasonably and fairly anticipate being haled into court in this District;
13 have purposefully directed activities at residents of this State; and at least a portion
14 of the patent infringement claims alleged herein arise out of or are related to one or
15 more of the foregoing activities.

16      12.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391
17 and 1400 because Defendants regularly conduct business in this District, and certain
18 of the acts complained of herein occurred in this District.

19 **CALTECH'S ASSERTED PATENTS**

20      13.    On October 3, 2006, the United States Patent Office issued U.S. Patent
21 No. 7,116,710, titled "Serial Concatenation of Interleaved Convolutional Codes
22 Forming Turbo-Like Codes" (the "'710 patent"). A true and correct copy of the
23 '710 patent is attached hereto as Exhibit A.

24      14.    On September 2, 2008, the United States Patent Office issued U.S.
25 Patent No. 7,421,032, titled "Serial Concatenation of Interleaved Convolutional
26 Codes Forming Turbo-Like Codes" (the "'032 patent"). A true and correct copy of
27 the '032 patent is attached hereto as Exhibit B. The '032 patent is a continuation of
28 the application that led to the '710 patent.

15.     On March 29, 2011, the United States Patent Office issued U.S. Patent No. 7,916,781, titled "Serial Concatenation of Interleaved Convolutional Codes Forming Turbo-Like Codes" (the "'781 patent").  A true and correct copy of the '781 patent is attached hereto as Exhibit C.  The '781 patent is a continuation of the application that led to the '032 patent, which is a continuation of the application that led to the '710 patent.

16.     On October 9, 2012, the United States Patent Office issued U.S. Patent No. 8,284,833, titled "Serial Concatenation of Interleaved Convolutional Codes Forming Turbo-Like Codes" (the "'833 patent").  A true and correct copy of the '833 patent is attached hereto as Exhibit D.  The '833 patent is a continuation of the application that led to the '781 patent, which is a continuation of the application that led to the '032 patent, which is a continuation of the application that led to the '710 patent.

17.     The Asserted Patents identify Hui Jin, Aamod Khandekar, and Robert J. McEliece as the inventors (the "Named Inventors").

18.     Caltech is the owner of all right, title, and interest in and to each of the Asserted Patents with full and exclusive right to bring suit to enforce the Asserted Patents, including the right to recover for past damages and/or royalties.

19.     The Asserted Patents are valid and enforceable.

## BACKGROUND TO THIS ACTION

20.     The Asserted Patents disclose a seminal improvement to coding systems and methods used for digital satellite transmission.  The Asserted Patents disclose an ensemble of codes called irregular repeat-accumulate (IRA) codes, which are specific types of low-density parity check (LDPC) codes.  The IRA codes disclosed in the Asserted Patents enable a transmission rate close to the theoretical limit, while also providing the advantage of a low encoding complexity.

21.     In September 2000, the Named Inventors of the Asserted Patents published a paper regarding their invention, titled "Irregular Repeat-Accumulate

Codes" for the Second International Conference on Turbo Codes. (Exhibit E.) This paper has been widely cited by experts in the industry.

22.   Experts recognize the importance and usefulness of the IRA codes disclosed in the September 2000 paper by the Named Inventors of the Asserted Patents. For example, a paper praising these IRA codes was published in August 2004 by Aline Roumy, Souad Guemghar, Giuseppe Caire, and Sergio Verdú in the IEEE Transactions on Information Theory. This paper, titled "Design Methods for Irregular Repeat-Accumulate Codes," states:

> IRA codes are, in fact, special subclasses of both irregular LDPCs and irregular turbo codes. . . . IRA codes are an appealing choice because the encoder is extremely simple, their performance is quite competitive with that of turbo codes and LDPCs, and they can be decoded with a very-low-complexity iterative decoding scheme.

(Exhibit F, at 1.) This paper also notes that, four years after the September 2000 paper, the Named Inventors were the only ones to propose a method to design IRA codes. (*Id.*)

23.   Numerous satellite communications protocols utilize IRA codes. These protocols include: (1) the "Digital Video Broadcasting (DVB); Second generation framing structure, channel coding and modulation systems for Broadcasting, Interactive Services, News Gathering and other broadband satellite applications" ("DVB-S2"); (2) the "Internet Protocol over Satellite" standard TIA-1008-B (2012) ("IPoS"), and (3) on information and belief, other protocols utilized by Defendants' products and services, including enhanced or modified versions of the DVB-S2 and IPoS protocols.

24.   The importance and usefulness of the IRA codes is manifest in their adoption as the proscribed channel coding method in the current DVB-S2 standard for digital satellite transmissions.

25.   Experts in the industry recognize that the DVB-S2 standard uses the

IRA codes initially disclosed by the Named Inventors of the Asserted Patents.  For example, a 2005 paper published by the highly regarded Institute of Electrical and Electronics Engineers (IEEE), titled "A Synthesizable IP Core for DVB-S2 LDPC Code Decoding," and authored by Frank Kienle, Torben Brack, and Norbert Wehn recognizes:

> The LDPC codes as defined in the DVB-S2 standard are IRA codes, thus the encoder realization is straight forward. Furthermore, the DVB-S2 code shows regularities which can be exploited for an efficient hardware realization.

(Exhibit G, at 1.)

26.    Moreover, this paper provides credit to the September 2000 paper authored by the Named Inventors of the Asserted Patents for the origination of the IRA codes that are defined in the DVB-S2 standard.  (*Id.* at 1 & n.8.)

27.    Similarly, on information and belief, a 2007 paper titled "Factorizable Modulo *M* Parallel Architecture for DVB-S2 LDPC Decoding," and published in the Proceedings of the 6th Conference on Telecommunications, recognizes that the DVB-S2 standard uses the IRA codes initially disclosed by the Named Inventors of the Asserted Patents.  This paper, authored by Marco Gomes, Gabriel Falcão, Vitor Silva, Vitor Ferreira, Alexandre Sengo, and Miguel Falcão, states:

> The new DVB-S2 [] standard adopted a special class of LDPC codes known by IRA codes [] as the main solution for the FEC system.

(Exhibit H, at 1.)

28.    Moreover, this paper also credits the September 2000 paper authored by the Named Inventors of the Asserted Patents for the origination of the IRA codes that are defined in the DVB-S2 standard.  (*Id.* at 1 & n.8.)

29.    As even further support, on information and belief, a 2006 industry paper published in the Journal of Communications Software and Systems, titled "Design of LDPC Codes: A Survey and New Results" and authored by Gianluigi

-7-

Liva, Shumei Song, Lan Lan, Yifei Zhang, Shu Lin, and William E. Ryan, confirms that the DVB-S2 standard uses the IRA codes, stating:

> The ETSI DVB S2 [] standard for digital video broadcast specifies two IRA code families with block lengths 64800 and 16200.

(Exhibit I, at 10-11.)

30.     As such, products, methods, equipment, and/or services that are designed to provide channel coding in accordance with this standard and/or to decode signals coded in accordance with the standard will practice one or more claims of each of the Asserted Patents, because the standard embodies the inventions of the Asserted Patents by using IRA codes.

31.     In addition, IRA codes can also be used in products, methods, equipment, and/or services that are not "compliant" with the DVB-S2 standard.  For example, the IPoS standard uses not only the DVB-S2 standard (which it uses for outroute transmissions), but also supports LDPC codes for inroute transmissions. On information and belief, the LDPC codes used for inroute transmissions are IRA codes.

32.     On information and belief, Hughes Defendants most recent fourth generation satellite broadband service, HughesNet® Gen4 satellite Internet services ("Gen4 services") uses versions of both the DVB-S2 and IPoS standards.  The Gen4 services were enabled by the launch of the EchoStar XVII satellite, which utilizes what the Hughes Defendants call "JUPITER High-Throughput Technology." According to Hughes Defendants, the satellite employs "an enhanced version of the IPoS/DVBS2 standard."

33.     On information and belief, in order to support and provide the Gen4 services offering to consumers and enterprise markets, Hughes Defendants manufacture, use, import, offer for sale, or sell products, methods, equipment, and/or services that infringe the Asserted Patents by using IRA codes.  For example,

Hughes Defendants provide two-way access to satellite broadband, including the internet, through gateway modulators that transmit to and receive from modems located at customer premises.  On information and belief, these gateway modulators and modems encode signals according to an enhanced version of the DVB-S2 and IPoS standards and decode such signals.

34.     On information and belief, Hughes provides the outroute portion of this service utilizing gateway hardware, software, and/or firmware which encode IRA codes and customer premises equipment, including, at least, the HT1000 and HT1100 modems, which can decode such IRA codes.

35.     On information and belief, the encoding on the inroute or return link for this service is performed in accordance with a version of the IPoS standard.  The IPoS standard for inroute communications supports the use of IRA codes with the same relevant structure as IRA codes used by the DVB-S2 standard, with the only difference being the IPoS standard uses shorter block lengths for encoding.  On information and belief, Hughes Defendants provide the inroute service utilizing customer premises equipment, including, at least, the HT1000 and HT1100 modems, which can encode such IRA codes, along with gateway hardware, software, and/or firmware which can decode such IRA codes.

36.     On information and belief, Hughes Defendants use the broadband equipment, including without limitation the HT1000 and HT1100 modems, gateway hardware, software and/or firmware ("Gen4 products"), in accord with the DVB-S2 and IPoS standards to encode and/or decode IRA codes signals, for testing, consulting, customer support, and the provision of internet access services, among other activities.

37.     On information and belief, Hughes Defendants further sell or provide Gen4 products, including the HT1000 and HT1100 modems, to Dish Defendants, who, in turn sell the service, under the dishNet brand name to customers.

38.     On information and belief, and according to public filings, DISH pays

Hughes Network a rate per dishNET subscriber on a monthly basis.

39.   On information and belief, Dish Defendants purchase from Hughes Defendants certain Gen4 products, including without limitation the HT1000, and HT1100 modems, and offer for sale, sell, provide, and/or distribute this equipment and service to its customers.  On information and belief, Dish Defendants use Gen4 products, in accord with the DVB-S2 and IPoS standards to encode and/or decode IRA codes signals, for testing, consulting and/or support services, among other activities.  On information and belief, the dishNET services are primarily bundled with other services offered by Dish Defendants.

## COUNT I

### Infringement of the '710 Patent

40.   Plaintiff re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

41.   On information and belief, in violation of 35 U.S.C. § 271, Defendants have infringed and are currently infringing, directly and/or through intermediaries, the '710 patent by making, using, selling, offering for sale, and/or importing into the United States, without authority, Gen4 products and services that practice one or more claims of the '710 patent.  These products, methods, equipment, and/or services encode signals using IRA codes, including in accordance with the DVB-S2 and IPoS standards and/or decode such signals.  Defendants have infringed and are currently infringing literally and/or under the doctrine of equivalents.

42.   On information and belief, in violation of 35 U.S.C. § 271, Defendants have infringed and are continuing to infringe the '710 patent by contributing to and/or actively inducing the infringement by others of the '710 patent by making, using, selling, offering for sale, and/or importing into the United States, without authority the Gen4 products and services that practice one or more claims of the '710 patent.

43.   Hughes Defendants have had actual knowledge of their infringement of

the '710 patent before the filing date of this Complaint through letters alleging such infringement, or at least have had actual knowledge of their infringement of the '710 patent since no later than the filing date of this Complaint.

44.    On information and belief, Dish Defendants have had actual knowledge of their infringement of the '710 patent before the filing date of this Complaint based on their marketing, sale, and distribution, among other activities, of Gen4 products and services and their relationship with Hughes Defendants. Dish Defendants at least have had actual knowledge of their infringement of the '710 patent since no later than the filing date of this Complaint.

45.    Notwithstanding Defendants' actual notice of infringement, Defendants have continued, directly and/or through intermediaries, to manufacture, use, import, offer for sale, or sell the Gen4 products and services with knowledge of or willful blindness to the fact that their actions will induce others, including but not limited to their customers; partners, including other Defendants; and/or end users, to infringe the '710 patent. Defendants have induced and continue to induce others to infringe the '710 patent in violation of 35 U.S.C. § 271 by encouraging and facilitating others to perform actions that Defendants know to be acts of infringement of the '710 patent with intent that those performing the acts infringe the '710 patent. Upon information and belief, Defendants, directly and/or through intermediaries,  advertise and distribute the Gen4 products and services, publish instruction materials, specifications and/or promotional literature describing the operation of the Gen 4 products and services, and/or offer training and/or consulting services regarding the Gen 4 products and services to their customers; partners, including other Defendants; and/or end users.   At least consumers; partners, including other Defendants; and/or end users of these Gen 4 products and services then directly or jointly infringe the '710 patent by making, using, selling, offering for sale, and/or importing into the United States, without authority, the Gen 4 products and services.

46.     Upon information and belief, Defendants know that the Gen 4 products and services are especially made or especially adapted for use in the infringement of the '710 patent.  The infringing components of these products are not staple articles or commodities of commerce suitable for substantial non-infringing use, and the infringing components of these products are a material part of the invention of the '710 patent.  Accordingly, in violation of 35 U.S.C. § 271, Defendants are also contributing, directly and/or through intermediaries, to the direct infringement of the '710 patent by at least the customers, partners, and/or end users of these Gen 4 products and services.  The customers, partners, and/or end users of these Gen 4 products and services directly infringe the '710 patent by making, using, selling, offering for sale, and/or importing into the United States, without authority, the Gen 4 products and services.

47.     As but one example of Hughes Defendants' contributory and/or induced infringement, Hughes Defendants explicitly encourage their customers to practice the methods disclosed and claimed in the '710 patent by using the Gen 4 products and services.  Hughes Defendants provide user guides to their customers for the Gen4 products and services, including the HT1000 and HT1100 modems. (*See* Exhibits J, K.)  On information and belief, through materials such as these, the Hughes Defendants actively encourage their consumers, partners, and/or end users to infringe the '710 patent through at least the HT1000 and HT1100 products, knowing those acts to be infringement of the '710 patent with intent that those performing the acts infringe the '710 patent.

48.     As but two examples of Dish Defendants' contributory and/or induced infringement, Dish Defendants explicitly encourage their customers to practice the methods disclosed and claimed in the '710 patent by using the Gen4 products and systems; and explicitly encourage Hughes Defendants to practice methods, and manufacture and sell products, which infringe one or more claims of the '710 patent through their promotion of use of the Hughes service to enable internet access for

certain customers who purchase the dishNet service to access the Internet. According to Dish Defendants' 2012 Annual Report (10-K), Dish Defendants lease to dishNET satellite internet subscribers the customer premise equipment. On information and belief, this equipment includes the HT1000 and HT1100 products. On information and belief, through providing this equipment, Dish Defendants actively encourage their consumers and end users to infringe the '710 patent through at least use of the equipment, knowing those acts to be infringement of the '710 patent with intent that those performing the acts infringe the '710 patent.

49. Defendants are not licensed or otherwise authorized to practice, contributorily practice and/or induce third parties to practice the claims of the '710 patent.

50. By reason of Defendants' infringing activities, Caltech has suffered, and will continue to suffer, substantial damages.

51. Caltech is entitled to recover from Defendants the damages sustained as a result of Defendants' wrongful acts in an amount subject to proof at trial.

52. Defendants' continuing acts of infringement are irreparably harming and causing damage to Caltech, for which Caltech has no adequate remedy at law, and will continue to suffer such irreparable injury unless Defendants' continuing acts of infringement are enjoined by the Court. The hardships that an injunction would impose are less than those faced by Caltech should an injunction not issue. The public interest would be served by issuance of an injunction. Thus, Caltech is entitled to a preliminary and a permanent injunction against further infringement.

53. Hughes Defendants' infringement of the '710 patent has been and continues to be willful and deliberate, justifying a trebling of damages under 35 U.S.C. § 284. Among other facts, Hughes Defendants have had knowledge of their infringement of the '710 patent before the filing date of this Complaint through letters alleging such infringement. Upon information and belief, Hughes Defendants' accused actions continued despite an objectively high likelihood that

they constituted infringement of the '710 patent.  Hughes Defendants either knew or should have known about their risk of infringing the '710 patent.  Hughes Defendants' conduct despite this knowledge was made with both objective and subjective reckless disregard for the infringing nature of their activities as demonstrated by Hughes Defendants' knowledge regarding the claims of the '710 patent.

54.   Defendants' infringement of the '710 patent is exceptional and entitles Caltech to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT II

### Infringement of the '032 Patent

55.   Plaintiff re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

56.   On information and belief, in violation of 35 U.S.C. § 271, Defendants have infringed and are currently infringing, directly and/or through intermediaries, the '032 patent by making, using, selling, offering for sale, and/or importing into the United States, without authority, Gen4 products and services that practice one or more claims of the '032 patent.   These products, methods, equipment, and/or services encode signals using IRA codes, including in accordance with the DVB-S2 and IPoS standards and/or decode such signals.  Defendants have infringed and are currently infringing literally and/or under the doctrine of equivalents.

57.   On information and belief, in violation of 35 U.S.C. § 271, Defendants have infringed and are continuing to infringe the '032 patent by contributing to and/or actively inducing the infringement by others of the '032 patent by making, using, selling, offering for sale, and/or importing into the United States, without authority the Gen4 products and services that practice one or more claims of the '032 patent.

58.   Hughes Defendants have had actual knowledge of their infringement of

the '032 patent before the filing date of this Complaint through letters alleging such infringement, or at least have had actual knowledge of their infringement of the '032 patent since no later than the filing date of this Complaint.

59. On information and belief, Dish Defendants have had actual knowledge of their infringement of the '032 patent before the filing date of this Complaint based on their marketing, sale, and distribution, among other activities, of Gen4 products and services and their relationship with Hughes Defendants. Dish Defendants at least have had actual knowledge of their infringement of the '032 patent since no later than the filing date of this Complaint.

60. Notwithstanding Defendants' actual notice of infringement, Defendants have continued, directly and/or through intermediaries, to manufacture, use, import, offer for sale, or sell the Gen4 products and services with knowledge of or willful blindness to the fact that their actions will induce others, including but not limited to their customers; partners, including other Defendants; and/or end users, to infringe the '032 patent. Defendants have induced and continue to induce others to infringe the '032 patent in violation of 35 U.S.C. § 271 by encouraging and facilitating others to perform actions that Defendants know to be acts of infringement of the '032 patent with intent that those performing the acts infringe the '032 patent. Upon information and belief, Defendants, directly and/or through intermediaries,  advertise and distribute the Gen4 products and services, publish instruction materials, specifications and/or promotional literature describing the operation of the Gen 4 products and services, and/or offer training and/or consulting services regarding the Gen 4 products and services to their customers; partners, including other Defendants; and/or end users.  At least consumers; partners, including other Defendants; and/or end users of these Gen 4 products and services then directly or jointly infringe the '032 patent by making, using, selling, offering for sale, and/or importing into the United States, without authority, the Gen 4 products and services.

61.    Upon information and belief, Defendants know that the Gen 4 products and services are especially made or especially adapted for use in the infringement of the '032 patent.  The infringing components of these products are not staple articles or commodities of commerce suitable for substantial non-infringing use, and the infringing components of these products are a material part of the invention of the '032 patent.  Accordingly, in violation of 35 U.S.C. § 271, Defendants are also contributing, directly and/or through intermediaries, to the direct infringement of the '032 patent by at least the customers, partners, and/or end users of these Gen 4 products and services.  The customers, partners, and/or end users of these Gen 4 products and services directly infringe the '032 patent by making, using, selling, offering for sale, and/or importing into the United States, without authority, the Gen 4 products and services.

62.    As but one example of Hughes Defendants' contributory and/or induced infringement, Hughes Defendants explicitly encourage their customers to practice the methods disclosed and claimed in the '032 patent by using the Gen 4 products and services.  Hughes Defendants provide user guides to their customers for the Gen4 products and services, including the HT1000 and HT1100 modems. (*See* Exhibits J, K.)  On information and belief, through materials such as these, the Hughes Defendants actively encourage their consumers, partners, and/or end users to infringe the '032 patent through at least the HT1000 and HT1100 products, knowing those acts to be infringement of the '032 patent with intent that those performing the acts infringe the '032 patent.

63.    As but two examples of Dish Defendants' contributory and/or induced infringement, Dish Defendants explicitly encourage their customers to practice the methods disclosed and claimed in the '032 patent by using the Gen4 products and systems; and explicitly encourage Hughes Defendants to practice methods, and manufacture and sell, products which infringe one or more claims of the '032 patent through their promotion of use of the Hughes service to enable internet access for

certain customers who purchase the dishNet service to access the Internet. According to Dish Defendants' 2012 Annual Report (10-K), Dish Defendants lease to dishNET satellite internet subscribers the customer premise equipment.   On information and belief, this equipment includes the HT1000 and HT1100 products. On information and belief, through providing this equipment, Dish Defendants actively encourage their consumers and end users to infringe the '032 patent through at least use of the equipment, knowing those acts to be infringement of the '032 patent with intent that those performing the acts infringe the '032 patent.

64.   Defendants are not licensed or otherwise authorized to practice, contributorily practice and/or induce third parties to practice the claims of the '032 patent.

65.   By reason of Defendants' infringing activities, Caltech has suffered, and will continue to suffer, substantial damages.

66.   Caltech is entitled to recover from Defendants the damages sustained as a result of Defendants' wrongful acts in an amount subject to proof at trial.

67.   Defendants' continuing acts of infringement are irreparably harming and causing damage to Caltech, for which Caltech has no adequate remedy at law, and will continue to suffer such irreparable injury unless Defendants' continuing acts of infringement are enjoined by the Court.   The hardships that an injunction would impose are less than those faced by Caltech should an injunction not issue. The public interest would be served by issuance of an injunction.   Thus, Caltech is entitled to a preliminary and a permanent injunction against further infringement.

68.   Hughes Defendants' infringement of the '032 patent has been and continues to be willful and deliberate, justifying a trebling of damages under 35 U.S.C. § 284.   Among other facts, Hughes Defendants have had knowledge of their infringement of the '032 patent before the filing date of this Complaint through letters alleging such infringement.   Upon information and belief, Hughes Defendants' accused actions continued despite an objectively high likelihood that

-17-

they constituted infringement of the '032 patent.  Hughes Defendants either knew or should have known about their risk of infringing the '032 patent.  Hughes Defendants' conduct despite this knowledge was made with both objective and subjective reckless disregard for the infringing nature of their activities as demonstrated by Hughes Defendants' knowledge regarding the claims of the '032 patent.

69.     Defendants' infringement of the '032 patent is exceptional and entitles Caltech to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

<u>**COUNT III**</u>

**<u>Infringement of the '781 Patent</u>**

70.     Plaintiff re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

71.     On information and belief, in violation of 35 U.S.C. § 271, Defendants have infringed and are currently infringing, directly and/or through intermediaries, the '781 patent by making, using, selling, offering for sale, and/or importing into the United States, without authority, Gen4 products and services that practice one or more claims of the '781 patent.  These products, methods, equipment, and/or services encode signals using IRA codes, including in accordance with the DVB-S2 and IPoS standards and/or decode such signals.  Defendants have infringed and are currently infringing literally and/or under the doctrine of equivalents.

72.     On information and belief, in violation of 35 U.S.C. § 271, Defendants have infringed and are continuing to infringe the '781 patent by contributing to and/or actively inducing the infringement by others of the '781 patent by making, using, selling, offering for sale, and/or importing into the United States, without authority the Gen4 products and services that practice one or more claims of the '781 patent.

73.     Hughes Defendants have had actual knowledge of their infringement of

the '781 patent before the filing date of this Complaint through letters alleging such infringement, or at least have had actual knowledge of their infringement of the '781 patent since no later than the filing date of this Complaint.

74. On information and belief, Dish Defendants have had actual knowledge of their infringement of the '781 patent before the filing date of this Complaint based on their marketing, sale, and distribution, among other activities, of Gen4 products and services and their relationship with Hughes Defendants. Dish Defendants at least have had actual knowledge of their infringement of the '781 patent since no later than the filing date of this Complaint.

75. Notwithstanding Defendants' actual notice of infringement, Defendants have continued, directly and/or through intermediaries, to manufacture, use, import, offer for sale, or sell the Gen4 products and services with knowledge of or willful blindness to the fact that their actions will induce others, including but not limited to their customers; partners, including other Defendants; and/or end users, to infringe the '781 patent. Defendants have induced and continue to induce others to infringe the '781 patent in violation of 35 U.S.C. § 271 by encouraging and facilitating others to perform actions that Defendants know to be acts of infringement of the '781 patent with intent that those performing the acts infringe the '781 patent. Upon information and belief, Defendants, directly and/or through intermediaries, advertise and distribute the Gen4 products and services, publish instruction materials, specifications and/or promotional literature describing the operation of the Gen 4 products and services, and/or offer training and/or consulting services regarding the Gen 4 products and services to their customers; partners, including other Defendants; and/or end users. At least consumers; partners, including other Defendants; and/or end users of these Gen 4 products and services then directly or jointly infringe the '781 patent by making, using, selling, offering for sale, and/or importing into the United States, without authority, the Gen 4 products and services.

76.    Upon information and belief, Defendants know that the Gen 4 products and services are especially made or especially adapted for use in the infringement of the '781 patent.  The infringing components of these products are not staple articles or commodities of commerce suitable for substantial non-infringing use, and the infringing components of these products are a material part of the invention of the '781 patent.  Accordingly, in violation of 35 U.S.C. § 271, Defendants are also contributing, directly and/or through intermediaries, to the direct infringement of the '781 patent by at least the customers, partners, and/or end users of these Gen 4 products and services.  The customers, partners, and/or end users of these Gen 4 products and services directly infringe the '781 patent by making, using, selling, offering for sale, and/or importing into the United States, without authority, the Gen 4 products and services.

77.    As but one example of Hughes Defendants' contributory and/or induced infringement, Hughes Defendants explicitly encourage their customers to practice the methods disclosed and claimed in the '781 patent by using the Gen 4 products and services.  Hughes Defendants provide user guides to their customers for the Gen4 products and services, including the HT1000 and HT1100 modems. (*See* Exhibits J, K.)  On information and belief, through materials such as these, the Hughes Defendants actively encourage their consumers, partners, and/or end users to infringe the '781 patent through at least the HT1000 and HT1100 products, knowing those acts to be infringement of the '781 patent with intent that those performing the acts infringe the '781 patent.

78.    As but two examples of Dish Defendants' contributory and/or induced infringement, Dish Defendants explicitly encourage their customers to practice the methods disclosed and claimed in the '781 patent by using the Gen4 products and systems; and explicitly encourage Hughes Defendants to practice methods, and manufacture and sell products, which infringe one or more claims of the '781 patent through their promotion of use of the Hughes service to enable internet access for

-20-

certain customers who purchase the dishNet service to access the Internet. According to Dish Defendants' 2012 Annual Report (10-K), Dish Defendants lease to dishNET satellite internet subscribers the customer premise equipment.   On information and belief, this equipment includes the HT1000 and HT1100 products. On information and belief, through providing this equipment, Dish Defendants actively encourage their consumers and end users to infringe the '781 patent through at least use of the equipment, knowing those acts to be infringement of the '781 patent with intent that those performing the acts infringe the '781 patent.

79.   Defendants are not licensed or otherwise authorized to practice, contributorily practice and/or induce third parties to practice the claims of the '781 patent.

80.   By reason of Defendants' infringing activities, Caltech has suffered, and will continue to suffer, substantial damages.

81.   Caltech is entitled to recover from Defendants the damages sustained as a result of Defendants' wrongful acts in an amount subject to proof at trial.

82.   Defendants' continuing acts of infringement are irreparably harming and causing damage to Caltech, for which Caltech has no adequate remedy at law, and will continue to suffer such irreparable injury unless Defendants' continuing acts of infringement are enjoined by the Court.  The hardships that an injunction would impose are less than those faced by Caltech should an injunction not issue. The public interest would be served by issuance of an injunction.  Thus, Caltech is entitled to a preliminary and a permanent injunction against further infringement.

83.   Hughes Defendants' infringement of the '781 patent has been and continues to be willful and deliberate, justifying a trebling of damages under 35 U.S.C. § 284.  Among other facts, on information and belief, Hughes Defendants have had knowledge of their infringement of the '781 patent, the subject matter of the '781 patent, and/or the invention of the '781 patent before the filing date of this Complaint. Upon information and belief, Hughes Defendants' accused actions

-21-

continued despite an objectively high likelihood that they constituted infringement of the '781 patent. Hughes Defendants either knew or should have known about their risk of infringing the '781 patent. Hughes Defendants' conduct despite this knowledge was made with both objective and subjective reckless disregard for the infringing nature of their activities as demonstrated by Hughes Defendants' knowledge regarding the claims of the '781 patent.

84. Defendants' infringement of the '781 patent is exceptional and entitles Caltech to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT IV

### Infringement of the '833 Patent

85. Plaintiff re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

86. On information and belief, in violation of 35 U.S.C. § 271, Defendants have infringed and are currently infringing, directly and/or through intermediaries, the '833 patent by making, using, selling, offering for sale, and/or importing into the United States, without authority, Gen4 products and services that practice one or more claims of the '833 patent. These products, methods, equipment, and/or services encode signals using IRA codes, including in accordance with the DVB-S2 and IPoS standards and/or decode such signals. Defendants have infringed and are currently infringing literally and/or under the doctrine of equivalents.

87. On information and belief, in violation of 35 U.S.C. § 271, Defendants have infringed and are continuing to infringe the '833 patent by contributing to and/or actively inducing the infringement by others of the '833 patent by making, using, selling, offering for sale, and/or importing into the United States, without authority the Gen4 products and services that practice one or more claims of the '833 patent.

88. Hughes Defendants have had actual knowledge of their infringement of

the '833 patent before the filing date of this Complaint through letters alleging such infringement, or at least have had actual knowledge of their infringement of the '833 patent since no later than the filing date of this Complaint.

89.   On information and belief, Dish Defendants have had actual knowledge of their infringement of the '833 patent before the filing date of this Complaint based on their marketing, sale, and distribution, among other activities, of Gen4 products and services and their relationship with Hughes Defendants. Dish Defendants at least have had actual knowledge of their infringement of the '833 patent since no later than the filing date of this Complaint.

90.   Notwithstanding Defendants' actual notice of infringement, Defendants have continued, directly and/or through intermediaries, to manufacture, use, import, offer for sale, or sell the Gen4 products and services with knowledge of or willful blindness to the fact that their actions will induce others, including but not limited to their customers; partners, including other Defendants; and/or end users, to infringe the '833 patent.  Defendants have induced and continue to induce others to infringe the '833 patent in violation of 35 U.S.C. § 271 by encouraging and facilitating others to perform actions that Defendants know to be acts of infringement of the '833 patent with intent that those performing the acts infringe the '833 patent.  Upon information and belief, Defendants, directly and/or through intermediaries,  advertise and distribute the Gen4 products and services, publish instruction materials, specifications and/or promotional literature describing the operation of the Gen 4 products and services, and/or offer training and/or consulting services regarding the Gen 4 products and services to their customers; partners, including other Defendants; and/or end users.  At least consumers; partners, including other Defendants; and/or end users of these Gen 4 products and services then directly or jointly infringe the '833 patent by making, using, selling, offering for sale, and/or importing into the United States, without authority, the Gen 4 products and services.

COMPLAINT FOR PATENT INFRINGEMENT

91.     Upon information and belief, Defendants know that the Gen 4 products and services are especially made or especially adapted for use in the infringement of the '833 patent.  The infringing components of these products are not staple articles or commodities of commerce suitable for substantial non-infringing use, and the infringing components of these products are a material part of the invention of the '833 patent.  Accordingly, in violation of 35 U.S.C. § 271, Defendants are also contributing, directly and/or through intermediaries, to the direct infringement of the '833 patent by at least the customers, partners, and/or end users of these Gen 4 products and services.  The customers, partners, and/or end users of these Gen 4 products and services directly infringe the '833 patent by making, using, selling, offering for sale, and/or importing into the United States, without authority, the Gen 4 products and services.

92.     As but two examples of Hughes Defendants' contributory and/or induced infringement, Hughes Defendants explicitly encourage their customers to practice the methods disclosed and claimed in the '833 patent by using the Gen 4 products and services; and explicitly encourage Hughes Defendants to practice methods, and manufacture and sell products, which infringe one or more claims of the '833 patent through their promotion of use of the Hughes service to enable internet access for certain customers who purchase the dishNet service to access the Internet.  Hughes Defendants provide user guides to their customers for the Gen4 products and services, including the HT1000 and HT1100 modems.  (*See* Exhibits J, K.)   On information and belief, through materials such as these, the Hughes Defendants actively encourage their consumers, partners, and/or end users to infringe the '833 patent through at least the HT1000 and HT1100 products, knowing those acts to be infringement of the '833 patent with intent that those performing the acts infringe the '833 patent.

93.     As but one example of Dish Defendants' contributory and/or induced infringement, Dish Defendants explicitly encourage their customers to practice the

methods disclosed and claimed in the '833 patent by using the Gen4 products and systems. According to Dish Defendants' 2012 Annual Report (10-K), Dish Defendants lease to dishNET satellite internet subscribers the customer premise equipment. On information and belief, this equipment includes the HT1000 and HT1100 products. On information and belief, through providing this equipment, Dish Defendants actively encourage their consumers and end users to infringe the '833 patent through at least use of the equipment, knowing those acts to be infringement of the '833 patent with intent that those performing the acts infringe the '833 patent.

94. Defendants are not licensed or otherwise authorized to practice, contributorily practice and/or induce third parties to practice the claims of the '833 patent.

95. By reason of Defendants' infringing activities, Caltech has suffered, and will continue to suffer, substantial damages.

96. Caltech is entitled to recover from Defendants the damages sustained as a result of Defendants' wrongful acts in an amount subject to proof at trial.

97. Defendants' continuing acts of infringement are irreparably harming and causing damage to Caltech, for which Caltech has no adequate remedy at law, and will continue to suffer such irreparable injury unless Defendants' continuing acts of infringement are enjoined by the Court. The hardships that an injunction would impose are less than those faced by Caltech should an injunction not issue. The public interest would be served by issuance of an injunction. Thus, Caltech is entitled to a preliminary and a permanent injunction against further infringement.

98. Hughes Defendants' infringement of the '833 patent has been and continues to be willful and deliberate, justifying a trebling of damages under 35 U.S.C. § 284. Among other facts, on information and belief, Hughes Defendants have had knowledge of their infringement of the '833 patent, the subject matter of the '833 patent, and/or the invention of the '833 patent before the filing date of this

Complaint. Upon information and belief, Hughes Defendants' accused actions continued despite an objectively high likelihood that they constituted infringement of the '833 patent. Hughes Defendants either knew or should have known about their risk of infringing the '833 patent. Hughes Defendants' conduct despite this knowledge was made with both objective and subjective reckless disregard for the infringing nature of their activities as demonstrated by Hughes Defendants' knowledge regarding the claims of the '833 patent.

99.   Defendants' infringement of the '833 patent is exceptional and entitles Caltech to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for the following relief:

(a)   A judgment that Defendants have infringed each and every one of the Asserted Patents;

(b)   A preliminary and permanent injunction against Defendants, its respective officers, agents, servants, employees, attorneys, parent and subsidiary corporations, assigns and successors in interest, and those persons in active concert or participation with them, enjoining them from infringement, inducement of infringement, and contributory infringement of each and every one of the Asserted Patents, including but not limited to an injunction against making, using, selling, and/or offering for sale within the United States, and/or importing into the United States, any products, methods, equipment and/or services that infringe the Asserted Patents;

(c)   Damages adequate to compensate Caltech for Defendants' infringement of the Asserted Patents pursuant to 35 U.S.C. § 284;

(d)   Prejudgment interest;

(e)   Post-judgment interest;

(f)   A judgment holding Hughes Defendants' infringement of the Asserted

COMPLAINT FOR PATENT INFRINGEMENT

1   Patents to be willful, and a trebling of damages pursuant to 35 U.S.C. § 284;

2        (g)    A declaration that this Action is exceptional pursuant to 35 U.S.C.

3   § 285, and an award to Caltech of its attorneys' fees, costs and expenses incurred in

4   connection with this Action; and

5        (h)    Such other relief as the Court deems just and equitable.

6

7

8   DATED: February 17, 2015     Respectfully submitted,

9        QUINN EMANUEL URQUHART &

10        SULLIVAN, LLP

11

12

13        By  */s/ James R. Asperger*

14        James R. Asperger
     *Attorneys for Plaintiff California Institute*

15        *of Technology*

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR PATENT INFRINGEMENT

1

# <u>DEMAND FOR JURY TRIAL</u>

2    Pursuant to Rule 38 of the Federal Rules of Civil Procedure and Local Rule

3 38-1 of this Court, Plaintiff hereby demands a trial by jury as to all issues so triable.

4

5 DATED: February 17, 2015         Respectfully submitted,

6                                  QUINN EMANUEL URQUHART &

7                                  SULLIVAN, LLP

8

9

10                                By   /s/ *James R. Asperger*

11                                   James R. Asperger
                                     *Attorneys for Plaintiff California Institute*
12                                   *of Technology*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28